UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

**RONALD MARK DRAUGHN**,

      Plaintiff,

V.

**OPTALIS HEALTHCARE CORPORATION**,

**RAJ PATEL** (Chief Executive Officer),

**JOE ERMIGER** (Regional Director of Operations),

**GALINA PETLAKH** (Regional Director of Operations),

and **PETER TROYAN** (Administrator of Optalis /

Allen Park Branch),

      Defendant(s)

_____/

Case: 2:24-cv-12918
Assigned To : McMillion, Brandy R.
Referral Judge: Patti, Anthony P.
Assign. Date : 11/4/2024
Description: CMP DRAUGHN V.
OPTALIS HEALTHCARE CORP.
ET AL (CMS)

## CIVIL RIGHTS ACTION FILED UNDER 42 USC 1983

    This action is being brought by the Plaintiff, Ronald Mark Draughn, against Optalis Healthcare Corporation, as a whole, along with Defendant' Raj Patel, Joe Ermiger, Galina Petlakh, and Peter Troyan, for the violation of plaintiff's federally protected rights under 42 U.S.C. § 1395i-3 (Federal Nursing Home Reform Act) and 42 CFR part 483 (Omnibus Budget Reconciliation Act of 1987); See, Health and Hospital Corp. of Marion County v. Talevski, 599 U.S. ___ (2023)**.**

1.     Furthermore, Plaintiff Draughn is bringing suit against the Optalis Corporation, Defendant Troyan for retaliation for the exercise of the Plaintiff's First Amendment Rights to seek redress and make complaints about his care ... while the Plaintiff was a patient at the Optalis Facility of Allen Park.

## Jurisdiction

2.      Defendants acted under color of state law in the deprivation of Plaintiff's statutory and inherent rights under the United States Constitution. 18 U.S.C. § 242.

## Address of Plaintiff:

3.      Plaintiff Ronald Draughn is currently a resident/patient at the Optalis (Health Care) facility of Allen Park, located at 9150 Allen Road, Room 48-A, Allen Park, MI 48101.

## Addresses of Defendant(s):

4.      Defendant **Raj Patel** is the Chief Executive Office for the Optalis (Health Care) Corporation, whose corporate offices are located at 25500 Meadowbrook Road, Suite 230, Novi, MI 48375.

5.      Defendant **Joe Ermiger** is employed as a Regional Director of Operation for Optalis (Health Care) Corporation, whose corporate offices are located at 25500 Meadowbrook Road, Suite 230, Novi, MI 48375.

6.      Defendant **Galina Petlakh** is employed as a Regional Director of Operation for Optalis (Health Care) Corporation, whose corporate offices are located at 25500 Meadowbrook Road, Suite 230, Novi, MI 48375.

7.      Defendant **Peter Troyan** is employed as a Facility Administrator for Optalis of Allen Park, and his office is located at 9150 Allen Road, Allen Park, MI 48101.

## General Statement of Liability:

8.      Defendant Optalis Corporation is a "person" for the purposes of liability. See, Health and Hospital Corp. of Marion County v. Talevski, 599 U.S. ___ (2023)**.** Under Michigan's statutory laws governing the licensing of Nursing Homes, "the Owner, Operator, and

2

governing body of a Nursing Homes are responsible for all phases of the operation of the Nursing Home and quality of care rendered in the Home. **See, MCL § 333.21713(a).** The above-mentioned Defendants are legally and/or personally responsible for the violations of the Plaintiff's federal and constitutional rights.

9.      The Optalis (Health Care) Corporation is licensed and certified by the State of Michigan to operate contingent to Federal certification by the U.S. Secretary of Health and Human Services. **See, MI Department Regulatory standards, R. 325.21504(3)(c).**  Optalis has thereby authorized to receive funds for health care operation pursuant to Title XIX of the Soc. Sec. Act, chapter 53, 49 Stat. 620, 42 U.S.C. 1396 to 1396f, 1396g-1 to 1396r-6, and 1396r-8 to 1396v.

## STATEMENT OF FACTS:

10.     Ronald Mark Draughn, Plaintiff in the above-entitled action, was admitted in Optalis of Allen Park on May 20th, 2024, after a very bad car accident in Detroit, Michigan. The accident occurred on April 13th,2024, whereby Plaintiff suffered a shoulder, broken femur, along with other injuries. The accident also resulted in Plaintiff having to have a total hip replacement.

11.      Plaintiff was prescribed in-house therapy by his doctors, which was the rationale behind the medical referral for his placement at Optalis of Allen Park; which was a Nursing Home that handled Post-acute Rehab for such patients.

12.     The Plaintiff's primary insurance was Medicaid, and since Optalis of Allen Park was authorized by the State of Michigan to accept Medicaid and Medicare patients, Mr. Draughn was accepted for admission into their facility.

13.       Most of the patients at Optalis Nursing Homes are Medicaid and Medicare recipients and statutorily acknowledged to be afforded rights under the Federal Nursing Homes Reform Act, et seq. See, MCL § 333.21720a (Michigan's statutory equivalent); see also, **R.** 325.20110, Michigan's regulatory standards for the FNHRA.

3

14.     While at Optalis, the Plaintiff was given a defective wheelchair upon his admission on May 20th, 2024, which had worn bearings and did not move without someone actually pushing it. This defect, coupled with Mr. Draughn's broken shoulder made it impossible for him to transition from his room to any activities or outdoors.

15.     Plaintiff was assigned to Room 48, at the Optalis facility.  On or around June 22nd, 2024, the central air and cooling system went out at the facility, which raised the temperatures to above 94° Fahrenheit, throughout the day and night. Since the Optalis facility is a secure facility, and thickly screened windows are prevented from being opened more than 3 inches, there was an inability for the Plaintiff and other residents to cool their rooms from the excessive heat.


15.     Many elderly and acute rehab patients would languish in the hallways of the facility in the undergarments in a futile attempt to escape the heat or seek the ice water that was passed out once per shift. Plaintiff, who suffers from high-blood pressure and hypertension suffered skyrocketing blood-pressure, headaches and difficulty breathing ... due to this excessive heat in his room.

16.     The replacement parts for the cooling system were not effectively installed until the first week of October 2024, whereby the Plaintiff and residents at the facility were made to combat the dangerously high temperatures for over 3-months. These grueling and miserable conditions were even more burdensome on the Plaintiff, who suffers from heat-related illnesses.

17.     On or around July 5th, 2024, Mr. Draughn discovered that the "hot water no longer worked in his room. When he informed staff and complained, he was told that the hot water throughout the facility was not working, because of a gas line failure. This alleged broken line was not fixed until August 22nd through August 24th of 2024.  In that period, the Plaintiff was denied showers, clean linen, along with clean clothing; due to the inability to launder items.

4

This inability to maintain basic hygiene and sanitation caused Plaintiff mental and emotional anguish.

18.       On or around July 14th, 2024, the toilet in the Plaintiff's room started randomly overflowing or stopped working.  Plaintiff made several complaints about this toilet backing up and overflowing while in use. Every time that the Plaintiff would attempt to use the toilet, feces, urine and debris from the toilet would over-flow and spill out upon the Plaintiff's person and clothing. The Plaintiff was told by maintenance that the toilet had low water pressure and the lines between the rooms may be clogged. This problem wasn't remedied until mid-September of 2024...and by this time, the Plaintiff had contracted a series of sores on his body from the torrent of waste spilled from the toilet.

19.       On or around August 18th, 2024, when the Plaintiff first noticed the infected area due to the toiletry waste, the doctor at Optalis examine him and prescribed an antibiotic cream to treat the area. This antibiotic cream was never administered to the Plaintiff ... despite the doctor informing him that she had ordered it repetitively in her notes. Soon after, the Plaintiff noticed an acute swelling in his feet, which kept him in excruciating pain. On or around the first week of September 2024, one the doctors at Optalis examined his legs and feet and prescribed that the Plaintiff's legs and feet to be wrapped and elevated each day.

20.       As of the filing of the instant Civil Rights Action, the Plaintiff (Mr. Draughn) has never received the antibiotic cream or treatment (having his legs and feet wrapped) as requested by the doctors at Optalis.

21.       During the second week of August 2024, the Plaintiff filed internal grievances dealing with the inhumane temperatures, lack of hot water, and toiletry or plumbing problems, but he was never interviewed or the matters investigated through Optalis' internal process. Every grievance or written complaint has been mysteriously lost or not responded to by Optalis.

22.       In late August of 2024, the Plaintiff contacted "Michigan's Long Term Cares Ombudsman Program" with his complaints, and the local ombudsman **Michelle Danou** came to visit the Plaintiff a week later. Ombudsman Danou, while visiting the Plaintiff's room,

***noticed the fact that the floor was so filthy…that her feet were literally sticking to the floor and other debris*** as she navigated the room.  Ombudsman Danou assured the Plaintiff that she would speak to some of the facility's administrative staff and keep the Plaintiff's identity anonymous to avoid any retaliatory animus.

23.        Soon after Ombudsman Danou's visit, the social workers and other staff at Optalis started to visit the Plaintiff's room and inform him that he would have to be moved to another facility. Staff informed the Plaintiff that the Social Worker's, Optalis Administrator (Peter Troyer) and other supervisors have been discussing the fact that the Plaintiff had been causing problems at the facility.  It is based upon information and belief that these "problems" referred to the Plaintiff's complaints and grievances about his care.

24.        These threats of moving the Plaintiff to another remote facility were made almost weekly. On October 14th, 2024, Mr. Draughn was told by a Social Worker at Optalis that staff had decided to send him to another Nursing Home called Orchards of Wayne. When Plaintiff investigated this Nursing Home, he found that it had the worst rating in the State and flagged as Very High Potential for injury or neglect.

**Claims for Relief based upon violation of the FNHRA:**

25.        The inordinate temperatures and inhumane conditions in which the Plaintiff was subjected to for months is a violation of 42 U.S.C. § 1395i-3 (Federal Nursing Home Reform Act) and 42 CFR part 483 (Omnibus Budget Reconciliation Act of 1987); along with, MI Department Regulatory standards, R. 325.1973(2) (governing Nursing Homes).

26.        The failure of Optalis to provide the Plaintiff with "hot water" nearly "two months" to bathe, maintain hygiene or wear clean clothing did subject the plaintiff to inhumane conditions, and was a violation of 42 U.S.C. § 1395i-3 (Federal Nursing Home Reform Act) and 42 CFR part 483 (Omnibus Budget Reconciliation Act of 1987); along with MCL § 333.21713 et. seq.; and MI Department Regulatory standards, R. 325.1933, 1970, 1974 and 1975.

27.        The failure of Optalis to provide the Plaintiff with access to a toilet with functional plumbing and water pressure was a violation of a patient's necessities of living, and thereby subjected the Plaintiff to not only inhumane conditions, but resulted in the humiliation, infection and physical injury of the Plaintiff. This omission of Optalis to provide these sanitary living conditions were a violation of 42 U.S.C. § 1395i-3 (Federal Nursing Home Reform Act) and 42 CFR part 483 (Omnibus Budget Reconciliation Act of 1987); along with MCL § 333.21713 et. seq.; and MI Department Regulatory standards, R. 325.1970; R. 325.21317(7) – 21317(9).

28.        The failure of Optalis to provide the Plaintiff with prescribed medical treatment for his skin infection and acute edema in his legs and feet was a clear violation of 42 U.S.C. § 1395i-3 (Federal Nursing Home Reform Act) and 42 CFR part 483 (Omnibus Budget Reconciliation Act of 1987); along with MCL § 333.21715(1)(b) and (2); and MI Department Regulatory standards, R. 325.1932.

## Claim of Relief regarding the Retaliation Claim:

29.        After the filing of complaints and seeking redress of grievances at Optalis, the Plaintiff was denied the above-mentioned medical treatment that was prescribed to him and facility staff became reluctant to provide basic care to the Plaintiff's needs. This denial of needed medical treatment and reluctance in care is directly correlated to the complaints regarding the Optalis facility by the Plaintiff.

30.        Furthermore, the active attempts by the Optalis staff to transfer the Plaintiff to another Nursing Home and Rehabilitation Facility (Orchards of Wayne) that has been categorized as having "potential and actual dangers" for its patients...because of Plaintiff's complaints and grievances to seek redress of Optalis mistreatments' was calculated to punish him and subject him to an adverse environment. This organized and conspiratorial behavior to retaliate against the Plaintiff was in violation of his constitutionally protected rights. See, **Mt. Healthy City School District Board of Education v. Doyle**, 429 U.S. 274

7

(1977); See also, MCL § 333.21772 (Michigan's recognition that retaliation is illegal by Optalis).

31.     In conclusion, Mr. Draughn was subjected to inhumane, substandard and injurious treatment by Optalis and its employees', in violation the FNHRA and other constitutional rights...and thereby is entitled to relief through this Honorable Court.

## RELIEF SOUGHT

### The Plaintiff seeks the following relief from this Honorable Court:

(A) Nominal. Compensatory, and Punitive damages for loss, humiliation, pain and mental and emotional distress...due to the Defendants' actions, omissions and intentional disregard for the Plaintiff's rights, liberties, freedoms and life.

(B) Grant Plaintiff Attorney Fees and Costs;

(C) Injunctive relief in the form of an Order directing Defendants to provide the Plaintiff with needed medical care, bringing the Optalis Facility in Allen Park up to regulatory standards, suspending federal certification of Optalis until the inhumane living conditions are corrected and ordering Optalis to supply the Plaintiff with non-defective medical equipment (wheelchair) during his recovery.

(D) The court utilize its powers under Pendant Jurisdiction and appoint a Receiver to oversee that regulatory standards of the FNHRA are met...as provided by State Law. See, MCL § 333.21751; see also, United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 - 729 (1966).

Respectfully submitted,

**Ronald Mark Draughn**

Plaintiff in Propria Persona status

9150 Allen Road, Room 48-A

Allen Park, MI 48101

### Statement of Verification

I, **Ronald Mark Draughn**, certify under penalty of perjury that the statements herein are true and correct, and can testify competently to the facts stated herein,,, by my undersigned signature below. Thus, this complaint is considered evidence pursuant to 28 U.S.C. § 1746.

Signature of Plaintiff: Ronald Mark Draughn    Date: 10/31/24

Align top of FedEx Express® shipping label

SHIP DATE: 31
ACTWGT: 0.10
CAD: 8570488/

ORIGIN ID:ARBA (734) 555-5555
RONALD M DRAGGON

9150 ALLEN RD

ALLEN PARK, MI 48101
UNITED STATES US

TO KINIKIA D. ESSIX CLERK OF THE COU
US DISTRICT CT. EASTERN DISTOFMI
231 W LAFAYETTE BLVD
ROOM 599
DETROIT MI 48226

(734) 666-6666

REF:

TUE – 05 [
EXPRE:

MI·

TRK# 7796 5948 6935
0201

66 DTWA

Envelope
Recycle me.

FedEx